

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

FILED
J.N
FEB X 9 2006
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

FREDERICK LOUIS BLOHM, JR., Plaintiff,

v.

VILLAGE OF ROSEMONT, DONALD E. STEPHENS, DONALD E. STEPHENS, II and WILLIAM ANDERSON, Defendants.

06CV756
JUDGE NORDBERG
MAG. KEYS

**COMPLAINT**

Plaintiff FREDERICK LOUIS BLOHM, JR., ("Blohm") by his attorneys, for his Complaint against defendants VILLAGE OF ROSEMONT ("Rosemont"), its Mayor/Village President, DONALD E. STEPHENS ("Mayor Stephens"), its Public Safety Chief, DONALD E. STEPHENS II ("Chief Stephens") and its Public Safety Assistant Chief, WILLIAM ANDERSON ("Chief Anderson"), alleges the following:

## I. NATURE OF THE ACTION

1. This is a civil action to redress injuries caused by defendants' deprivation of Blohm's rights under the United States Constitution and laws, and under the common law of the State of Illinois. Blohm has been deprived of rights guaranteed by the First and Fourteenth Amendments and federal statutes by reason of defendants' termination of his employment as a Rosemont Public Safety Officer because of his race and because of his stated opposition to and refusal to participate in corrupt practices in the Rosemont Police Department. In addition, defendants' termination of Blohm's employment violated the public policy of the State of Illinois. Blohm brings this action

under 42 U.S.C. §§ 1981 and 1983, the First and Fourteenth Amendments of the United States Constitution, and Illinois common law.

## II. JURISDICTION AND VENUE

2. Counts I and II of this Complaint arise under 42 U.S.C. §1983 for deprivations of Blohm's rights to free speech and equal protection of the law under the First and Fourteenth Amendments to the United States Constitution. Count III of this Complaint is brought pursuant to 42 U.S.C. §1981 for defendants' deprivation of Blohm's right to make and enforce contracts on an equal basis with white citizens. This Court has jurisdiction over the subject matter of those claims pursuant to 28 U.S.C. §§1331 and 1343.

3. Count IV of this Complaint is brought under Illinois Common law. This Court has jurisdiction over the subject matter of that claim pursuant to 28 U.S.C. §1367(a) because that claim is so related to Blohm's claims in Counts I through III that it forms part of the same case or controversy.

4. Count V is brought pursuant to the federal Fair Labor Standards Act, 29 U.S.C. §201, *et seq*. The Court has jurisdiction over the subject matter of that claim pursuant to 28 U.S.C. §1331.

5. Venue is proper in the Northern District of Illinois because all parties reside within the district and all relevant actions occurred within this district.

## III. THE PARTIES

6. Plaintiff Blohm is an African-American citizen and resident of Illinois who was employed as a Rosemont Public Safety Officer from on or about February 22, 2002 until on or about September 14, 2004.

7. Defendant Rosemont is a municipal corporation created pursuant to statutes of the State of Illinois.

8. Defendant Mayor Stephens is the Mayor/Village President of Rosemont. As such, he is a municipal policymaker responsible for the operation of Rosemont, including the operation of its Police/Public Safety Department. He is sued in his individual capacity for unlawful actions performed under color of law.

9. Defendant Chief Stephens is the son of Mayor Stephens and the Chief of the Rosemont Department of Public Safety. As such, he is a municipal policymaker responsible for the operation of the Rosemont Police/Public Safety Department. He is sued in his individual capacity for his unlawful acts performed under color of law.

10. Defendant Chief Anderson is the Assistant Chief of the Rosemont Department of Public Safety. As such, he is a municipal policymaker responsible for the operation of the Rosemont Police/Public Safety Department. He is sued in his individual capacity for his unlawful acts performed under color of law.

## IV. FACTUAL BASE FOR BLOHM'S LEGAL CLAIMS

11. Blohm became employed as a Rosemont Public Safety Officer on or about February 22, 2002. Prior to that time, he had been a Police Officer with the Illinois Secretary of State Police for eleven and a half years.

12. While employed by Rosemont, Blohm as one of only three African-American full-time Public Safety Officers. Most of the remainder were Caucasian. Use of racial epithets was common throughout the department and both supervisors and officers commonly referred to the race of the three African-American department members.

13. Defendants also frequently spoke in such a manner. For example, Mayor Stephens would call out to African-American officers, "Hey, African-American [or Negro], get over here."

14. Generally, Rosemont Public Safety Officers are assigned to work in the Rosemont Fire and/or Police Departments, and are assigned to each department for at least one year. Blohm's assignment in the Rosemont Fire Department, however, was only for ten months, of which two and one-half months was spent at the Fire Academy.

15. During the seven and one-half months that Blohm worked in Rosemont as a firefighter, he was the only African-American and only non-White person on his shift, and was frequently subjected to racial harassment and discriminatory treatment.

16. During the one year, eight and one half months Blohm worked in the Rosemont Police Department, he performed his job duties in a exemplary manner. For example, in the Patrol Division, Blohm had the highest number of felony arrests, was in the top five in misdemeanor arrests and was second in driving under the influence arrests. As a member of the tactical team, and a field training officer, Blohm also was recommended for three departmental commendations.

17. When Blohm first became employed by Rosemont, he moved into an apartment that he rented from its owner, the Village of Rosemont.

18. Although Rosemont purports to require its full-time employees to reside in the Village, it was common practice for Public Safety employees to own homes elsewhere, where their families resided, but rent housing from Rosemont in the Village and stay there only on days they worked. There were numerous other employees who simply lived outside of Rosemont without repercussions.

19. On October 26, 2002, Blohm married a Chicago Police Officer governed by the City of Chicago's residency requirement. The couple owned a home in Chicago where Blohm's wife and son lived. Blohm disclosed these arrangements to management in the Rosemont Department of Public Safety and was assured that defendants considered the arrangement to satisfy Rosemont's residency requirement.

20. While Blohm was employed by Rosemont, the Police Department had a widely known practice of unequal enforcement of the law, favoring relatives and associates of the Stephens family and other Village officials. On numerous occasions, Blohm objected to that practice and indicated that he would not participate in it.

21. In or about March of 2002 Blohm issued a traffic citation to an employee of H&H Electric, which has a contract with the Rosemont Department of Public Works and whose employees reportedly have provided free personal electrical work for Rosemont officials and employees. Over Blohm's objection, Chief (then Captain) Anderson voided the citation.

22. On January 29, 2004, Blohm arrested an individual for driving under the influence, despite the individual's assertion that he was friends with a Rosemont Police Lieutenant. The following day, that Lieutenant berated Blohm for having made that arrest despite the invocation of the driver's friendship with the Lieutenant. Other supervisory officers, including Lieutenant Stephens, Chief Stephens' son (Mayor Stephens' grandson) were present but did and said nothing.

23. In February of 2004, Blohm stopped an individual who had disobeyed a stop sign. When Blohm and his partner approached the vehicle, the driver tried to hand the officers his telephone, informing them that Bradley Stephens, Mayor Stephens' son and Chief Stephens' brother, was on the telephone and wanted to speak to them. The officers refused to take the telephone. In

the course of issuing the citation, Blohm discovered a quantity of marijuana in the car and placed the driver under arrest.

24. At the police station, Chief Anderson and Bradley Stephens attempted to pressure Blohm into not pursing any arrest or investigation concerning the drug charge. Blohm resisted and insisted that the investigation be pursued. A subsequent search of the driver's residence uncovered two more pounds of marijuana. The driver, a friend and associate of Bradley Stephens, and whose uncle is a business associate of Mayor Stephens, was charged with possession of marijuana with intent to distribute. At one point, the individual admitted to Blohm that he had been selling marijuana in Rosemont for eleven years. Blohm reported that to Chief Anderson, who responded that he knew that and that the individual had been "warned to knock it off." After Blohm was suspended from his job in the Rosemont Police Department, he learned that the charges against this individual were voluntarily dismissed by the prosecution, in the felony courtroom where Chief Anderson's wife worked as Assistant State's Attorney.

25. In June of 2004, Blohm arrested another driver for driving under the influence. When Blohm learned that Lieutenant Stephens had authorized the release of that individual on his own recognizance, without requiring that he post a monetary bond, Blohm objected and Lieutenant Stephens responded angrily.

26. In July of 2004, Blohm began to issue three state traffic citations to a Valet parking attendant employed by "Mr. Valet" for parking in a fire lane, tinted windows and no front license plate. "Mr. Valet" reportedly is owned by Chief Anderson and an individual known as "Joey Wad," and has valet parking contracts for the Donald E. Stephens Convention Center, the Rosemont Theater and numerous restaurants and other locations in Rosemont.

27. A Police Sergeant came to the scene and conferred with Blohm, at which point Chief Anderson arrived at the scene. After the Sergeant and Chief Anderson conversed with the attendant, the Sergeant told Blohm, "Chief Anderson does not want any state citations written to this guy." Blohm gave the Sergeant the attendant's driver's license and two state citations he had completed, told the Sergeant he would not void those citations, and left the scene. Chief Anderson later summoned Blohm to his office and said that despite the citations, the attendant would be released without having to post bond. Chief Anderson also claimed that "Mr. Valet" attendants were permitted to park up to two vehicles in the fire lane in question.

28. Also in July of 2004, Blohm pulled over a vehicle being driven in an erratic and unsafe manner and upon doing so, observed obvious signs that the driver was suffering from alcohol-induced intoxication. When Blohm asked the driver for his license, the driver stated that he had "just dropped off Bradley Stephens," with whom he had been out all evening. Blohm responded that he did not play "the Rosemont name game" and insisted on production of the driver's license and proof of insurance. Sobriety tests, during which the driver continued to invoke the name of Bradley Stephens, confirmed that the driver was impaired by alcohol and had a blood alcohol measurement by portable Breathalyzer of 0.217.

29. A Sergeant arrived on the scene, followed by Lieutenant Stephens. The Sergeant informed Blohm that the driver was the manager of the Willow Creek Health Club, which is owned and operated by Rosemont. After conferring with Lieutenant Stephens, and over Blohm's objection, the Sergeant told the driver to go home and allowed him to drive away from the scene.

30. On July 21, 2004, Mayor Stephens called a meeting of all sworn members of the Rosemont Department of Public Safety and informed them that anyone violating Rosemont's residency requirement "will be fired."

31. Later that day, Deputy Chief Petruzzelli informed Blohm that he was being investigated for violation of the residency requirement. Blohm responded that department management always knew that he owned a house in Chicago, where his wife, a Chicago Police Officer, was required to live, but that he also rented an apartment in Rosemont, where he lived most days each week and where he also was registered to vote, and that his drivers license and license plate were registered to that address. Petruzzelli responded that Chief Anderson was in contact with the Chicago Police Department and that Blohm would have to resign his Rosemont employment or his wife and son would have to move to Rosemont, which would have meant Blohm's wife would lose her job as a Chicago Police Officer. Blohm was then placed on administrative leave.

32. On July 22, 2004, Deputy Chief Petruzzelli issued two memoranda to Blohm ordering him to prepare memoranda justifying his actions in connection with the "Mr. Valet" parking attendant incident and the traffic stop of the Willow Creek Health Club manager. Blohm did so, and did not omit the involvement in those incidents of Chief Anderson, Bradley Stephens, "Joey Wad" and Lieutenant Stephens.

33. On July 29, 2004, Blohm was informed that Chief Stephens had recommended to the Rosemont Board of Public Safety Commissioners that Blohm be discharged as a Rosemont Public Safety Officer, and that Blohm had been suspended without pay pending a hearing scheduled for August 18, 2004. That hearing later was continued until September 15, 2004.

34. Prior to that date, Blohm was told that other officers and Rosemont employees also would be discharged for residency violations and that to avoid discharge, Blohm's only options were to have his wife resign as a Chicago Police Officer and move his wife and son to Rosemont, or divorce his wife. That choice coerced Blohm into resigning from his Rosemont job on September 14, 2004.

35. After Blohm resigned, all efforts to enforce the Rosemont residency requirement against other Caucasian officers and employees who were in violation of that requirement ceased.

36. Violation of the Rosemont residency requirement was a pretextual basis for defendant's actions against Blohm, designed to conceal the actual, but unlawful motivations for those actions.

**COUNT I**
**(Section 1983 - First Amendment)**

1-36. Blohm incorporates by reference the allegations of paragraphs 1 through 36.

37. Blohm was suspended without pay and discharged in retaliation for his speaking out against and refusing to participate in defendants' practice of unequal law enforcement and favoritism toward relatives and friends of defendants and other members of the Stephens' family.

38. Blohm's objections to that practice constituted speech on matters of public concern protected by the First Amendment to the United States Constitution, and defendants' retaliatory actions against Blohm cannot be justified by Rosemont's interest in promoting efficiency in its Department of Public Safety, or by any other legitimate governmental interest.

39. Defendants' retaliatory actions against Blohm caused him to suffer injuries of both a pecuniary and non-pecuniary nature.

WHEREFORE, Blohm prays for entry of judgment in his favor and against defendants and for all appropriate relief available to him under 42 U.S.C. §§1983 and 1988.

**COUNT II**
**(Section 1983 - Equal Protection)**

1-36. Blohm incorporates by reference the allegations of paragraphs 1 through 36 of Count I.

37. Blohm's African-American race was a substantial factor motivating defendants' adverse actions in suspending and discharging Blohm, as is evident from the fact that Caucasian officers whose family living arrangements were similar to Blohm's have not been suspended or discharged, but continue to be employed by Rosemont.

38. Defendants' racially motivated adverse actions against Blohm caused him to be deprived of his right to equal protection of the law guaranteed by the Fourteenth Amendment to the United States Constitution.

39. Defendants' actions which caused Blohm to be deprived of his right to equal protection also caused Blohm to suffer injuries of a pecuniary and non-pecuniary nature.

WHEREFORE, Blohm prays for entry of judgment in his favor and against defendants, and for all appropriate relief available to him under 42 U.S.C. §§1983 and 1988.

**COUNT III**
**(Section 1981)**

1-37. Blohm incorporates by reference the allegations of paragraphs 1 through 37 of Count II.

38. Defendants' racially motivated adverse actions against Blohm denied him his right to make and enforce contracts on an equal basis with white citizens in violation of 42 U.S.C. §1981.

39. Defendants' actions which violated Blohm's rights under 42 U.S.C. §1981 also caused Blohm to suffer injuries of a pecuniary and non-pecuniary nature.

WHEREFORE, Blohm prays for entry of judgment in his favor and against defendants, and for all appropriate relief available to him under 42 U.S.C. §§1981 and 1988.

**COUNT IV**
**(Illinois Law - Retaliatory Discharge)**

1-37. Blohm incorporates by reference the allegations of paragraphs 1 through 36 of Count I.

38. Defendants' retaliatory discharge of Blohm was contrary to Illinois public policy and caused injury and damages to Blohm.

39. Defendants retaliatory discharge of Blohm was done with malice and with utter disregard for Blohm's rights.

WHEREFORE, Blohm prays for entry of judgment in his favor and against defendants and for compensatory and punitive damages as allowed by Illinois common law.

**COUNT V**
**(Fair Labor Standards Act)**

1-36. Blohm incorporates by reference the allegations of paragraphs 1 through 36 of Count I.

37. Throughout Blohm's employment, defendants consistently compensated Blohm for overtime hours at his regular rate of pay rather than one and one-half times that rate in violation of Section 207 of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §207.

38. Defendants' violation of Section 207 of the FLSA was willful.

WHEREFORE, Blohm prays for entry of judgment in his favor and against defendants, and for all appropriate relief available under the FLSA.

Respectfully submitted,

Terence J. Moran, Esq.
Hughes Socol Piers Resnick & Dym, Ltd.
70 West Madison, Suite 4000
Chicago, Illinois 60602
312/580-0100