## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| FREDERICK LOUIS BLOHM, JR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 06 CV 00756 |
| | ) | |
| VILLAGE OF ROSEMONT, DONALD E. | ) | Judge Nordberg |
| STEPHENS, DONALD E. STEPHENS, II | ) | |
| and WILLIAM ANDERSON, | ) | Magistrate Judge Keys |
| | ) | |
| Defendants. | ) | |

## DEFENDANTS VILLAGE OF ROSEMONT AND
## DONALD E. STEPHENS' ANSWER TO COMPLAINT

Defendants VILLAGE OF ROSEMONT and DONALD E. STEPHENS (the "Defendants")

by and through their attorneys, Peter M. Rosenthal and Joy A. Roberts, Rosenthal, Murphey &

Coblentz, answer the Complaint, as follows:

## I. NATURE OF THE ACTION

1.　　This is a civil action to redress injuries caused by defendants' deprivation of Blohm's

rights under the United States Constitution and laws, and under the common law of the State of

Illinois. Blohm has been deprived of rights guaranteed by the First and Fourteenth Amendments and

federal statutes by reason of defendants' termination of his employment as a Rosemont Public Safety

Officer because of his race and because of his stated opposition to and refusal to participate in

corrupt practices in the Rosemont Police Department. In addition, defendants' termination of

Blohm's employment violated the public policy of the State of Illinois. Blohm brings this action

under 42 U.S.C. §§ 1981 and 1983, the First and Fourteenth Amendments of the United States Constitution, and Illinois common law.

**ANSWER:**

**Defendants admit this is a civil action brought by plaintiff pursuant to 42 U.S.C. §§ 1981 and 1983, the First and Fourteenth Amendments of the United States Constitution, and Illinois common law. Defendants deny the remainder of the allegations in this paragraph.**

## II. JURISDICTION AND VENUE

2.     Counts I and II of this Complaint arise under 42 U.S.C. §1983 for deprivations of Blohm's rights to free speech and equal protection of the law under the First and Fourteenth Amendments to the United States Constitution. Count III of this Complaint is brought pursuant to 42 U.S.C. §1981 for defendants' deprivations of Blohm's right to make and enforce contracts on an equal basis with white citizens. This Court had jurisdiction over the subject matter of those claims pursuant to 28 U.S.C. §§1331 and 1343.

**ANSWER:**

**Defendants admit the allegations in this paragraph, except that the Defendants deny that any deprivation of Blohm's rights occurred.**

3.     Count IV of this Complaint is brought under Illinois Common law. This Court has jurisdiction over the subject matter of that claim pursuant to 28 U.S.C §1367(a) because that claim is so related to Blohm's claims in Counts I through III that it forms part of the same case or controversy.

**ANSWER:**

**Defendants admit the allegations in this paragraph.**

2

4.     Count V is brought pursuant to the federal Fair Labor Standards Act, 29 U.S.C. §201, *et seq.* The Court has jurisdiction over the subject matter of that claim pursuant to 28 U.S.C. §1331.

**<u>ANSWER</u>:**

**Defendants admit the allegations in this paragraph.**

5.     Venue is proper in the Northern District of Illinois because all parties reside within the district and all relevant actions occurred within this district.

**<u>ANSWER</u>:**

**Defendants admit the allegations in this paragraph.**

## III.  <u>THE PARTIES</u>

6.     Plaintiff Blohm is an African-American citizen and resident of Illinois who was employed as a Rosemont Public Safety Officer from on or about February 22, 2002 until on or about September 14, 2004.

**<u>ANSWER</u>:**

**Defendants admit plaintiff was employed as a Rosemont Public Safety Officer from February 22, 2002 until he resigned on September 14, 2004.  Defendants are without knowledge or information sufficient to form a belief as to whether plaintiff is an African American or as to where he currently resides.**

7.     Defendant Rosemont is a municipal corporation created pursuant to statutes of the State of Illinois.

**<u>ANSWER</u>:**

**Answering the allegations in Paragraph 7 of the complaint, Defendants state that the Village of Rosemont is a municipal corporation that was established and exists pursuant to the**

constitution and statutes of the State of Illinois. Answering further, Defendants state that the Village of Rosemont is a home rule unit of local government pursuant to the provisions of Article 7, Section 6 of the Illinois Constitution.

8.     Defendant Mayor Stephens is the Mayor/Village President of Rosemont. As such, he is a municipal policymaker responsible for the operation of Rosemont, including the operation of its Police/Public Safety Department. He is sued in his individual capacity for unlawful actions performed under color of law.

**ANSWER:**

**Defendants admit Donald E. Stephens is the Mayor (or Village President) of the Village of Rosemont. Defendants deny that the allegations in this paragraph fully or accurately describe Donald E. Stephens' authority and responsibilities as Mayor of the Village of Rosemont. Defendants admit Donald E. Stephens is being sued in his individual capacity. Defendants deny that Donald E. Stephens acted unlawfully.**

9.     Defendant Chief Stephens is the son of Mayor Stephens and the Chief of the Rosemont Department of Public Safety. As such, he is a municipal policymaker responsible for the operation of the Rosemont Police/Public Safety Department. He is sued in his individual capacity for his unlawful acts performed under color of law.

**ANSWER:**

**Defendants admit Donald E. Stephens, II is the son of Donald E. Stephens and is the Director of the Village of Rosemont's Department of Public Safety. Defendants deny that the allegations in this paragraph fully or accurately describe Donald E. Stephens' II authority and responsibilities as Director of the Department of Public Safety of the Village of Rosemont.**

4

**Defendants admit that Donald E. Stephens, II is being sued in his individual capacity. Defendants deny that Donald E. Stephens II acted unlawfully.**

10. Defendant Chief Anderson is the Assistant Chief of the Rosemont Department of Public Safety. As such, he is a municipal policymaker responsible for the operation of the Rosemont Police/Public Safety Department. He is sued in his individual capacity for his unlawful acts performed under color of law.

ANSWER:

**Defendants admit William Anderson is the Assistant Director of the Department of Public Safety of the Rosemont Department of Public Safety. Defendants deny that the allegations in this paragraph fully or accurately describes William Anderson's authority and responsibilities as the Assistant Director of the Department of Public Safety of the Village of Rosemont. Defendants further admit that William Anderson is being sued in his individual capacity. Defendants deny that William Anderson acted unlawfully.**

## IV. FACTUAL BASE FOR BLOHM'S LEGAL CLAIMS

11. Blohm became employed as a Rosemont Public Safety Officer on or about February 22, 2002. Prior to that time, he had been a Police Officer with the Illinois Secretary of State Police for eleven and a half years.

ANSWER:

**Defendants admit that plaintiff began his employment as a Rosemont Public Safety Officer on February 22, 2002. Defendants further admit that plaintiff was previously employed as a police officer with the Illinois Secretary of State Police. Defendants are without**

**knowledge or information to form a belief as to the truth of the remaining allegations in Paragraph 11.**

12.     While employed by Rosemont, Blohm as one of only three African-American full-time Public Safety Officers. Most of the remainder were Caucasian. Use of racial epithets was common throughout the department and both supervisors and officers commonly referred to the race of the three African-American department members.

**ANSWER:**

**Defendants admit that at the time Plaintiff was employed as a Village of Rosemont Public Safety Officer there were two (2) full-time African American Rosemont Public Safety Officers, other than the plaintiff. Defendants are without knowledge or information to form a belief as to the truth of the allegations in the second sentence of Paragraph 12 as it is unclear as to what is meant by the term "Caucasian" and specifically what characteristics or ancestry one must have in order to be considered "Caucasian" as that word is used in the complaint. Defendants deny the remainder of the allegations in this paragraph.**

13.     Defendants also frequently spoke in such a manner. For example, Mayor Stephens would call out to African-American officers, "Hey, African-American [or Negro], get over here."

**ANSWER:**

**Defendants deny the allegations in this paragraph.**

14.     Generally, Rosemont Public Safety Officers are assigned to work in the Rosemont Fire and/or Police Departments, and are assigned to each department for at least one year. Blohm's assignment in the Rosemont Fire Department, however, was only for ten months, of which two and one-half months was spent at the Fire Academy.

6

**ANSWER**:

Answering the allegations in this paragraph, Defendants state that during their probationary periods, full-time Public Safety Officers of the Village of Rosemont are assigned to work in the Fire Suppression Division or the Patrol Division of the Village's Public Safety Department and that the term of an assignment is generally for a period of not less than one year. The plaintiff was assigned to the Fire Suppression Division for a period of ten months, which included the time that he spent obtaining training at a firefighter's training academy necessary for him to become certified as a firefighter in the State of Illinois. The plaintiff was reassigned to the Patrol Division after being assigned to the Fire Suppression Division for the ten month period due to manpower shortages in the Patrol Division and due to plaintiff's prior experience as a police officer for the Illinois Secretary of State's Office.

15.     During the seven and one-half months that Blohm worked in Rosemont as a firefighter, he was the only African-American and only non-White person on his shift, and was frequently subjected to racial harassment and discriminatory treatment.

**ANSWER**:

Defendants admit that plaintiff was assigned to work as a firefighter during the time that he was employed by the Village of Rosemont as a Public Safety Officer. Defendants deny that plaintiff was frequently subjected to racial harassment and discriminatory treatment when he was assigned to work as a firefighter. Defendants are without knowledge or information sufficient to form a belief as to the truth of the remainder of the allegations in this paragraph.

16.     During the one year, eight and one half months Blohm worked in the Rosemont Police Department, he performed his job duties in an exemplary manner. For example, in the Patrol Division, Blohm had the highest number of felony arrests, was in the top five in misdemeanor arrests and was second in driving under the influence arrests. As a member of the tactical team, and a field training officer, Blohm also was recommended for three departmental commendations.

**ANSWER:**

**Defendants admit that while assigned to the Patrol Division, plaintiff at times worked as a member of the tactical team and served as a field training officer, and that relative to other officers assigned to the Patrol Division he ranked high in terms of the number of felony, misdemeanor and driving under the influence arrests. Defendants are without knowledge or information sufficient to form a belief as to the truth of the remainder of the allegations in this paragraph.**

17.     When Blohm first became employed by Rosemont, he moved into an apartment that he rented from its owner, the Village of Rosemont.

**ANSWER:**

**Defendants deny that when Blohm was first employed by the Village of Rosemont he moved into an apartment that he rented from the Village of Rosemont. Answering further Defendants state that after being appointed as a full-time Public Safety Officer and becoming a full-time Village employee, the plaintiff leased an apartment from the Village of Rosemont in a Village-owned building that is used to provide housing for Village of Rosemont employees.**

18.     Although Rosemont purports to require its full-time employees to reside in the Village, it was common practice for Public Safety employees to own homes elsewhere, where their

8

families resided, but rent housing from Rosemont in the Village and stay there only on days they worked. There were numerous other employees who simply lived outside of Rosemont without repercussions.

**ANSWER:**

**Defendants admit that the Village of Rosemont has a residency requirement whereby full time employees, including, but not limited to, full-time Public Safety Officers, are required to reside in the Village of Rosemont. Defendants deny the remainder of the allegations in this paragraph.**

19.    On October 26, 2002, Blohm married a Chicago Police Officer governed by the City of Chicago's residency requirement. The couple owned a home in Chicago where Blohms' wife and son lived. Blohm disclosed these arrangements to management in the Rosemont Department of Public Safety and was assured that defendants considered the arrangement to satisfy Rosemont's residency requirement.

**ANSWER:**

**Defendants lack sufficient knowledge or information sufficient to form a belief as to the truth of the allegations that on October 26, 2002 plaintiff married a Chicago Police Officer governed by the City of Chicago's residency requirement, and that the couple owned a home in Chicago where plaintiff's wife and son lived. Defendants deny the remainder of the allegations in this paragraph.**

20.    While Blohm was employed by Rosemont, the Police Department had a widely known practice of unequal enforcement of the law, favoring relatives and associates of the Stephens

family and other Village officials. On numerous occasions, Blohm objected to that practice and indicated that he would not participate in it.

**ANSWER:**

**Defendants deny the allegations in this paragraph.**

21. In or about March of 2002 Blohm issued a traffic citation to an employee of H&H Electric, which has a contract with the Rosemont Department of Public Works and whose employees reportedly have provided free personal electrical work for Rosemont officials and employees. Over Blohms' objection, Chief (then Captain) Anderson voided the citation.

**ANSWER:**

**Defendants admit that plaintiff issued a traffic citation to an employee of H&H Electric. Defendants admit that H&H Electric has had a contract with the Village of Rosemont to perform certain types of electrical work for the Village relating to the repair and maintenance of traffic signals. Defendants admit that Defendant William Anderson voided a traffic citation that had been issued to an employee of H&H Electric who at the time was engaged in repairing or maintaining a traffic signal. Defendants deny that plaintiff objected to the traffic citation being voided. Defendants have not heard or received any reports that H&H Electric has provided free personal electrical work for Rosemont officials and employees, nor do they have any reason to believe that H&H Electric has in fact provided free personal electrical work for Rosemont officials and employees. Defendants lack sufficient knowledge or information to form a belief as to the truth of any remaining allegations in this paragraph.**

22. On January 29, 2004, Blohm arrested an individual for driving under the influence, despite the individual's assertion that he was friends with a Rosemont Police Lieutenant. The

following day, that Lieutenant berated Blohm for having made that arrest despite the invocation of the driver's friendship with the Lieutenant. Other supervisory officers, including Lieutenant Stephens, Chief Stephens' son (Mayor Stephens' grandson) were present but did and said nothing.

**ANSWER:**

**Answering the allegations in Paragraph 22, Defendants admit that on January 29, 2004, plaintiff arrested Fred Etzel for driving under the influence. Defendants deny the remainder of the allegations in this paragraph.**

23. In February of 2004, Blohm stopped an individual who had disobeyed a stop sign. When Blohm and his partner approached the vehicle, the driver tried to hand the officers his telephone; informing them that Bradley Stephens, Mayor Stephens' son and Chief Stephens' brother was on the telephone and wanted to speak to them. The officers refused to take the telephone. In the course of issuing the citation, Blohm discovered a quantity of marijuana in the car and placed the driver under arrest.

**ANSWER:**

**Defendants admit that on February 4, 2004, plaintiff effectuated a traffic stop against Daniel Relaz for disobeying a posted stop sign. Defendants further admit that after Relaz stopped his vehicle, plaintiff discovered marijuana in the vehicle. Defendants lack suffcient knowledge or information to form a belief as to the truth of the remainder of the allegations made in this paragaph.**

24. At the police station, Chief Anderson and Bradley Stephens attempted to pressure Blohm into not pursing any arrest or investigation concerning the drug charge. Blohm resisted and insisted that the investigation be pursued. A subsequent search of the driver's residence uncovered

two more pounds of marijuana. The driver, a friend and associate of Bradley Stephens, and whose uncle is a business associate of Mayor Stephens, was charged with possession of marijuana with intent to distribute. At one point, the individual admitted to Blohm that he had been selling marijuana in Rosemont for eleven years. Blohm reported that to Chief Anderson, who responded that he knew that and that the individual had been "warned to knock it off." After Blohm was suspended from his job in the Rosemont Police Department, he learned that the charges against this individual were voluntarily dismissed by the prosecution, in the felony courtroom where Chief Anderson's wife worked as Assistant State's Attorney.

**ANSWER**:

**Defendants deny that William Anderson and Bradley Stephens attempted to pressure plaintiff into not pursuing any arrest or investigation of Daniel Relaz concerning the possession of marijuana charge. Defendants admit a subsequent search of Daniel Relaz's residence was conducted and quantities of marijuana were found as a result of this search. Defendants admit that Bradley Stephens is the son of Donald E. Stephens and the brother of Donald E. Stephens II. Defendants deny the allegations in this paragraph accurately and fully characterize the relationships between Daniel Relaz and Bradley Stephens. Answering further, the day after the search occurred, Daniel Relaz's employment with the Village of Rosemont was involuntarily terminated. Defendants admit that Daniel Relaz was charged with possession of marijuana with the intent to distribute. Defendants have been informed that Daniel Relaz is related to Isaac Degen. Isaac Degen is a partner in the firm of Degen and Rosato Construction Company which has done construction related work for the Village of Rosemont. Isaac Degen is a friend of Donald E. Stephens. Defendants admit that the charges**

12

against Daniel Relaz were voluntarily dismissed by the Cook County States Attorney. **This dismissal occurred because there was a lack of evidence to sustain the charges after the court determined that the search of Daniel Relaz which occurred as part of the initial traffic stop during which the plaintiff alleges he discovered that Relaz had a quantity of marijuana in his possession was not a legal search and ordered that the evidence that was discovered as a result of the search be suppressed. Defendants deny that the wife of William Anderson, who is an assistant Cook County States Attorney, had any involvement in the prosecution of Daniel Relaz. Defendants deny the remainder of the allegations in this paragraph.**

25.     In June of 2004, Blohm arrested another driver for driving under the influence. When Blohm learned that Lieutenant Stephens had authorized the release of that individual on his own recognizance, without requiring that he post a monetary bond, Blohm objected and Lieutenant Stephens responded angrily.

**ANSWER**:

**Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

26.     In July of 2004, Blohm began to issue three state traffic citations to a Valet parking attendant employed by "Mr. Valet" for parking in a fire lane, tinted windows and no front license plate. "Mr. Valet" reportedly is owned by Chief Anderson and an individual known as "Joey Wad," and has valet parking contracts for the Donald E. Stephens Convention Center, the Rosemont Theater and numerous restaurants and other locations in Rosemont.

**ANSWER**:

**Defendants admit that on July 15, 2004, plaintiff issued two state citations to John Pappadis who was working as a valet parking attendant at the Ram Restaurant located on Higgins Road in the Village of Rosemont.** **Defendants admit that plaintiff initiated the preparation of a third citation which was never completed by plaintiff or issued. Defendants deny that John Pappadis is an employee of Mr. Valet. Defendants admit that "Mr. Valet" is owned by William Anderson, but deny that any individual known as "Joey Wad" has an ownership interest in Mr. Valet. Defendants admit that Mr. Valet has contracts to provide valet parking services at at the Donald E. Stephens Convention Center, the Rosemont Theatre and at other locations, including restaurants, in the Village of Rosemont. Defendants lack sufficient knowledge or information to form a belief as to the truth of the remaining allegations in this paragraph.**

27.     A Police Sergeant came to the scene and conferred with Blohm, at which point Chief Anderson arrived at the scene. After the Sergeant and Chief Anderson conversed with the attendant, the Sergeant told Blohm, "Chief Anderson does not want any state citations written to this guy." Blohm gave the Sergeant the attendant's driver's license and two state citations he had completed, told the Sergeant he would not void those citations, and left the scene. Chief Anderson later summoned Blohm to his office and said that despite the citations, the attendant would be released without having to post bond. Chief Anderson also claimed that "Mr. Valet" attendants were permitted to park up to two vehicles in the fire lane in question.

**ANSWER**:

Defendants admit that Sergeant Frank Siciliano of the Village of Rosemont Public Safety Department came to the Ram Restaurant. Defendants admit that Chief Anderson also came to the Ram Restaurant. Chief Anderson did not want state citations issued to John Pappadis for having a vehicle with tinted glass and no front license plate as the vehicle in question was parked on private property and no violation of a state statute had been observed. Plaintiff nevertheless did in fact issue two state citations to John Pappadis. Defendants admit that the valet parking attendant at the Ram Restaurant was permitted to park his vehicle in a fire lane. Defendants admit that John Pappadis posted an I-bond after being issued the two state citations. Defendants deny that Chief Anderson summoned plaintiff to his office as alleged in this paragraph. Defendants deny the remaining allegations in Paragraph 27.

28.     Also in July of 2004, Blohm pulled over a vehicle being driven in an erratic and unsafe manner and upon doing so, observed obvious signs that the driver was suffering from alcohol-induced intoxication. When Blohm asked the driver for his license, the driver stated that he had "just dropped off Bradley Stephens" with whom he had been out all evening. Blohm responded that he did not play "the Rosemont name game" and insisted on production of the driver's license and proof of insurance. Sobriety tests, during which the driver continued to invoke the name of Bradley Stephens, confirmed that the driver was impaired by alcohol and had a blood alcohol measurement by portable Breathalyzer of 0.217.

**ANSWER**:

15

**Defendants admit that in July, 2004, a vehicle being driven by Douglas DuBrock was pulled over for a traffic stop by plaintiff. Defendants are without knowledge or information sufficient to form a belief as to the truth of the remainder of the allegations in this paragraph.**

29.     A Sergeant arrived on the scene, followed by Lieutenant Stephens. The Sergeant informed Blohm that the driver was the manager of the Willow Creek Health Club, which is owned and operated by Rosemont. After conferring with Lieutenant Stephens, and over Blohm's objection, the Sergeant told the driver to go home and allowed him to drive away from the scene.

**ANSWER**:

**Defendants admit that Sergeant Kolman and Lieutenant Stephens came to the scene of the traffic stop after the stop occurred. Defendants admit that Douglas DuBrock was at the time of the traffic stop employed by the Village of Rosemont as the Assistant Manager of the Willow Creek Club. The Willow Creek Club is a health club which is owned and operated by the Village of Rosemont. Defendants deny the remainder of the allegations in this paragraph.**

30.     On July 21, 2004, Mayor Stephens called a meeting of all sworn members of the Rosemont Department of Public Safety and informed them that anyone violating Rosemont's residency requirement "will be fired."

**ANSWER**:

**Defendants admit Mayor Stephens met with officers of the Village of Rosemont Public Safety Department on or about July 21, 2004 and informed the officers present that if any of them were in violation of the Village's residency requirement, their employment with the Village would be terminated, unless they came into compliance with the residency requirement. Defendants deny any other allegations in this paragraph.**

16

31.     Later that day, Deputy Chief Petruzzelli informed Blohm that he was being investigated for violation of the residency requirement.  Blohm responded that department management always knew that he owned a house in Chicago, where his wife, a Chicago Police Officer, was required to live, but that he also rented an apartment in Rosemont, where he lived most days each week and where he also was registered to vote, and that his drivers license and license plate were registered to that address. Petruzzelli responded that Chief Anderson was in contact with the Chicago Police Department and that Blohm would have to resign his Rosemont employment or his wife and son would have to move to Rosemont, which would have meant Blohm's wife would lose her job as a Chicago Police Officer.  Blohm was then placed on administrative leave.

**ANSWER:**

**Defendants admit that Deputy Chief Petruzzelli  informed the plaintiff that he was being investigated for being in violation of the residency requirement and that such an investigation did occur.  Defendants admit that plaintiff was placed on administrative leave July 21, 2004.  Defendants deny the remainder of the allegations in this paragraph.**

32.     On July 22, 2004, Deputy Chief Petruzzelli issued two memoranda to Blohm ordering him to prepare memoranda justifying his actions in connection with the "Mr. Valet" parking attendant incident and the traffic stop of the Willow Creek Health Club manager.  Blohm did so, and did not omit the involvement in those incidents of Chief Anderson, Bradley Stephens, "Joey Wad" and Lieutenant Stephens.

**ANSWER:**

**Defendants admit that on July 22, 2004, Deputy Chief Petruzzelli issued a memorandum to plaintiff requesting him to prepare a Departmental Memorandum explaining**

17

**what transpired during the incident which resulted in citations being issued to John Pappadis.**
**Defendants admit that plaintiff prepared a memorandum to Deputy Chief Petruzzelli dated**
**July 26, 2004 regarding this incident. Defendants deny the remainder of the allegations in this**
**paragraph.**

33.     On July 29, 2004, Blohm was informed that Chief Stephens had recommended to the

Rosemont Board of Public Safety Commissioners that Blohm be discharged as a Rosemont Public

Safety Officer, and that Blohm had been suspended without pay pending a hearing scheduled for

August 18, 2004. That hearing later was continued until September 15, 2004.

**ANSWER**:

**Defendants admit the allegations in this paragraph.**

34.     Prior to that date, Blohm was told that other officers and Rosemont employees also

would be discharged for residency violations and that to avoid discharge, Blohm's only options were

to have his wife resign as a Chicago Police Officer and move his wife and son to Rosemont, or

divorce his wife. That choice coerced Blohm into resigning from his Rosemont job on September

14, 2004.

**ANSWER**:

**Defendants are without knowledge or information sufficient to form a belief as to the**
**truth of the allegations in this paragraph.**

35.     After Blohm resigned, all efforts to enforce the Rosemont residency requirements

against other Caucasian officers and employees who were in violation of that requirement ceased.

**ANSWER**:

**Defendants deny the allegations in this paragraph.**

18

36.     Violation of the Rosemont residency requirement was a pretextual basis for defendant's actions against Blohm, designed to conceal the actual, but unlawful motivations for those actions.

**ANSWER:**

**Defendants deny the allegations in this paragraph.**

## COUNT 1
### (Section 1983-First Amendment)

1-36.   Blohm incorporates by reference the allegations of paragraphs 1 through 36.

**ANSWER:**

**Defendants re-allege and incorporate herein the answers previously set forth to paragraphs 1 through 36.**

37.     Blohm was suspended without pay and discharged in retaliation for his speaking out against and refusing to participate in defendants' practice of unequal law enforcement and favoritism toward relatives and friends of defendants and other members of the Stephens' family.

**ANSWER:**

**Defendants deny the allegations in this paragraph.**

38.     Blohm's objections to that practice constituted speech on matters of public concern protected by the First Amendment to the United States Constitution, and defendants' retaliatory actions against Blohm cannot be justified by Rosemont's interest in promoting efficiency in its Department of Public Safety, or by any other legitimate governmental interest.

**ANSWER:**

**Defendants deny the allegations in this paragraph.**

19

39.     Defendants' retaliatory actions against Blohm caused him to suffer injuries of both a pecuniary and non-pecuniary nature.

**ANSWER**:

**Defendants deny the allegations in this paragraph.**

## COUNT II
### (Section 1983-Equal Protection)

1-36.     Blohm incorporates by reference the allegations of paragraphs 1 through 36 of Count I.

**ANSWER**:

**Defendants re-allege and incorporate herein the answers previously set forth to paragraphs 1 through 36.**

37.     Blohm's African-American race was a substantial factor motivating defendant's adverse actions in suspending and discharging Blohm, as is evident from the fact that Causacian officers whose family living arrangements were similar to Blohm's have not been suspended or discharged, but continue to be employed by Rosemont.

**ANSWER**:

**Defendants deny the allegations in this paragraph.**

38.     Defendants' racially motivated adverse actions against Blohm caused him to be deprived of his right to equal protection of the law guaranteed by the Fourteenth Amendment to the United States Constitution.

**ANSWER**:

**Defendants deny the allegations in this paragraph.**

20

39. Defendants' actions which caused Blohm to be deprived of his right to equal protection also caused Blohm to suffer injuries of a pecuniary and non-pecuniary nature.

**ANSWER:**

**Defendants deny the allegations in this paragraph.**

## COUNT III
## (Section 1981)

1-37. Blohm incorporates by reference the allegations of paragraphs 1 through 37 of Count II.

**ANSWER:**

**Defendants re-allege and incorporate herein the answers previously set forth to paragraphs 1 through 37.**

38. Defendants' racially motivated adverse actions against Blohm denied him his right to make and enforce contracts on an equal basis with white citizens in violations of 42 U.S.C. §1981.

**ANSWER:**

**Defendants deny the allegations in this paragraph.**

39. Defendants' actions which violated Blohm's rights under 42 U.S.C. §1981 also caused Blohm to suffer injuries of a pecuniary and non-pecuniary nature.

**ANSWER:**

**Defendants deny the allegations in this paragraph.**

## COUNT IV
### (Illinois Law - Retaliatory Discharge)

**In response to the allegations in Count IV, Defendants simultaneously file with this Answer and incorporate herein, Defendants' Motion to Strike and Dismiss Count IV of the Complaint.**

## COUNT V
### (Fair Labor Standards Act)

1-36. Blohm incorporates by reference the allegations of paragraphs 1 through 36 of Count I.

**ANSWER**:

**Defendants re-allege and incorporate herein the answers previously set forth to paragraphs 1 through 36.**

37. Throughout Blohm's employment, defendants consistently compensated Blohm for overtime hours at his regular rate of pay rather than one and one-half times that rate in violation of Section 207 of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §207.

**ANSWER**:

**Defendants deny the allegations in this paragraph.**

38. Defendants' violation of Section 207 of the FLSA was willful.

**ANSWER**:

**Defendants deny the allegations in this paragraph.**

VILLAGE OF ROSEMONT and DONALD E. STEPHENS,
Defendants.


By: _____ /s/  Peter M. Rosenthal_____
One of their Attorneys


Peter M. Rosenthal (Atty No. 02391147)
Joy A. Roberts (Atty No. 6275781)
Rosenthal, Murphey & Coblentz
30 N. LaSalle Street, Suite 1624
Chicago, Illinois 60602
Tel. 312-541-1070
Fax 312-541-9191


G:\rmcj\Blohm\Answer to complaint (rev'd).wpd

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 8, 2006, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of said filing to all parties listed below:

Terrance J. Moran
Hughes, Socol, Piers, Resnick & Dym, Ltd.
70 W. Madison Street, Suite 4000
Chicago, Illinois 60602

                                         ___/s/___ Douglas M. Doty_____
ROSENTHAL, MURPHEY & COBLENTZ
Attorneys for Village of Rosemont and
  Donald E. Stephens
30 North LaSalle Street, Suite 1624
Chicago, Illinois 60602
Tel. (312) 541-1070
Fax: (312) 541-1070